# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# MISSOULA DIVISION

| | |
|---|---|
| In re:<br><br>Warren Charles Bodeker,<br><br>    Debtor.<br>_____<br><br>CHRISTY L. BRANDON, Chapter 7 Trustee,<br><br>    Appellant,<br><br>vs.<br><br>WARREN CHARLES BODEKER,<br><br>    Appellee. | Bankruptcy Case No. 12-60137<br><br>CV 14-195-M-BMM<br><br>**MEMORANDUM<br>AND ORDER** |

## **INTRODUCTION**

  Appellant Chapter 7 Trustee Christy L. Brandon (Brandon) appeals from the final order of the United States Bankruptcy Court for the District of Montana allowing Debtor Warren Bodeker (Bodeker) to rescind his waiver of homestead

exemption. The Court possesses jurisdiction under 28 U.S.C. § 158(a).

## BACKGROUND

Bodeker filed a voluntary Chapter 7 bankruptcy petition on February 2, 2012. Brandon was appointed Trustee. Bodeker listed his home on Schedule A. He listed a claim of homestead exemption on Schedule C for his home near Plains, Montana. He signed his Schedules and Statements of Financial Affairs stating under penalty of perjury that they were true and correct. They were not. Bodeker failed to disclose on Schedule B tens of thousands of dollars worth of gold and silver coins and other assets.

Brandon learned of Bodeker's undisclosed assets. She questioned Bodeker about them at the § 341 meeting. Bodeker admitted that he had failed to disclose the coins and other assets.

Bodeker sought advice from counsel as to the possible adverse consequences that could result from his fraudulent conduct. Counsel advised Bodeker as to the potential consequences. Counsel advised Bodeker he could face criminal charges. Counsel further advised Bodeker that his homestead exemption could be subject to an equitable surcharge as Ninth Circuit decisional law permitted a bankruptcy court to equitably surcharge a debtor's homestead exemption for payment of administrative expenses, when "reasonably necessary . . . to protect the integrity of

the bankruptcy process . . .". *See Latman v. Burdette*, 366 F.3d 774, 785-86 (9th Cir. 2004).

Bodeker entered into a stipulation with Brandon and the United States Trustee on or about April 5, 2012, to avoid these possible adverse consequences. Bodeker expressly waived both his homestead exemption and his right to a discharge as part of the settlement. The parties filed the stipulation with the bankruptcy court on April 6, 2012. The bankruptcy court approved the stipulation by order dated April 9, 2012. The bankruptcy court determined that the stipulation was "fair and equitable," and satisfied the requirements of Fed. R. Bank. P. 9019(a). (Doc. 6-1 at 1).

Brandon filed a motion for permission to sell Bodeker's homestead on May 3, 2012. Brandon also moved for an order to require Bodeker to vacate his property. The bankruptcy court granted the motions.

Brandon attempted to sell Bodeker's homestead. Bodeker disrupted the sale attempt. No sale occurred. Brandon concluded that any further attempt to sell the homestead would be too dangerous in light of Bodeker's resistance. Brandon instead focused on selling certain gold and silver coins that Bodeker previously had provided to her. Bodeker sold the coins in June of 2012.

The proceeds from the sale of the coins proved insufficient to pay the

allowed claims against Bodeker's bankruptcy estate. Brandon sought to sell Bodeker's homestead to make up for the deficiency. Brandon hired a real estate agent. Bodeker objected to the hiring of the real estate agent.

Nineteen months after the waiver of homestead exemption had been approved by the bankruptcy court, Bodeker moved, on October 31, 2013, to set aside his waiver of homestead exemption. Bodeker made the following arguments: 1) he had signed the waiver under coercion; 2) he had not understood the meaning and consequences of the waiver when he signed it; 3) he had filed a second homestead exemption after having executed the waiver; and 4) the waiver of homestead exemption did not comply with Montana law. Bodeker also moved, under Fed. R. Civ. P. 60(b)(4), to have the bankruptcy court's order approving the waiver set aside. Bodeker argued that the bankruptcy court's failure to conduct a hearing on the proposed stipulation violated Fed. R. Bank. P. 9019(a). Brandon and the United States Trustee opposed the motions.

The United States Supreme Court issued its decision in *Law v. Siegel*, 134 S. Ct. 1188 (2014), before the bankruptcy court issued its ruling on Bodeker's motions. The Court in *Siegel* overturned the Ninth Circuit's equitable surcharge rule under *Latman*. The Court held that no equitable surcharge could be applied against a debtor's homestead exemption for administrative expenses. A surcharge

imposed for such purposes would contravene the prescriptions of 11 U.S.C. § 522(k). *Siegel*, 134 S. Ct. at 1195.

Brandon informed the bankruptcy court of the Supreme Court's decision in *Siegel*. Brandon asserted, however, that *Siegel* had no impact on Bodeker's pending motions due to the fact that Bodeker had waived his right to a homestead exemption as part of a settlement of claims.

The bankruptcy court ruled on Bodeker's motions on June 11, 2014. The bankruptcy court rejected all of the arguments advanced by Bodeker for rescinding the waiver of homestead exemption. The bankruptcy court also rejected Bodeker's argument for setting aside its order approving the waiver of homestead exemption under Rule 60(b)(4). The bankruptcy court nevertheless concluded that the order approving the waiver of homestead exception should be set aside, under Rule 60(b)(6), because Bodeker's motion could also be construed as challenging the "continuing viability of the applying the law of the case doctrine." (Doc. 1-3 at 23).

The bankruptcy court reasoned that relief from the order approving the waiver of homestead exemption was appropriate because the "main reason" Bodeker had agreed to waive his homestead exemption was to avoid the application of an equitable surcharge for Brandon's fees and costs, and "[t]he

threat of an equitable surcharge against [Bodeker's] homestead exemption disappear[ed] after *Law v. Siegel*." (Doc. 1-3 at 25-26). The bankruptcy court did not state specifically that Fed. R. Civ. 60(b)(6) was the authority upon which it relied in granting Bodeker relief from the order approving his waiver of homestead exemption. It is reasonable to presume, however, that the bankruptcy court relied upon Rule 60(b)(6), as no other rule authorizes relief from a final order. Brandon timely appealed the bankruptcy court's decision.

## ISSUE PRESENTED

This case presents a single issue for review – Whether the bankruptcy court properly rescinded its order approving Bodeker's waiver of homestead exemption based upon a subsequent change in decisional law?

## STANDARD OF REVIEW

The Court reviews for clear error the bankruptcy court's findings of fact. *In re Pomona Valley Medical Group, Inc.*, 476 F.3d 665, 670 (9th Cir. 2007). The Court reviews *de novo* the bankruptcy court's conclusions of law. *In re Rains*, 428 F.3d 893, 900 (9th Cir. 2005). The Court reviews for abuse of discretion the bankruptcy court's decision to rescind its order approving the waiver of homestead exemption under Fed. R. Civ. P. 60(b)(6). *See Delay v. Gordon*, 475 F.3d 1039, 1043 (9th Cir. 2007).

## DISCUSSION

The bankruptcy court's order approving Bodeker's waiver of homestead exemption qualifies as a final order of the bankruptcy court for purposes of Rule 60(b) relief. *See Rein v. Povidian Financial Corp.*, 270 F.3d 895, 903 (9th Cir. 2001). The bankruptcy court determined that it had the authority to set aside that order under Rule 60(b)(6) based on its conclusion that the United States Supreme Court's decision in *Siegel* represented an intervening change in controlling authority. (Doc. 1-3 at 23-30).

Federal Rule of Civil Procedure 60(b) applies in bankruptcy proceedings through Fed. R. Bank. P. 9024. Rule 60(b) sets forth a number of grounds for relief from a final order. It states:

> (b) **Grounds for Relief from a Final Judgment, Order or Proceeding**. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;

> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

Rule 60(b)(6) represents a catch-all provision. *Tolkin v. Pergament*, 2012 WL 1132475 *9 (E.D. N.Y. 2012); *Walker v. Epps*, 2008 WL 2095704 *2 (N. D. Miss. 2008). Courts use Rule 60(b)(6) "sparingly." *Lal v. California*, 610 F.3d 518, 524 (9th Cir. 2010). Relief under Rule 60(b)(6) requires a showing of "extraordinary circumstances." *Id*. The requirement of extraordinary circumstances respects public policy favoring the finality of judgments and termination of litigation. *See Blue Diamond Coal Co. v. Trustees of the UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001).

A mere change in decisional law after entry of a final order rarely constitutes an exceptional circumstance that would justify relief under rule 60(b)(6). *See United States ex rel. Garibaldi v. Orleans Parish Sch. Bd.*, 397 F.3d 334, 337 (5th Cir. 2005). Similarly, a change in the law that occurs after a settlement agreement should not be considered an extraordinary circumstance that would warrant relief from the settlement under Rule 60(b)(6). For example, the Court in *United States v. Bank of New York*, 14 F.3d 756, 759-60 (2d Cir. 1994), recognized a party's

-8-

"failure to properly estimate the loss or gain from entering a settlement agreement is not an extraordinary circumstance that justifies relief under Rule 60(b)(6)." The Court in *Tolkin*, 2012 WL 1132475 at *9, likewise determined that Rule 60(b)(6) was not intended to relieve a party from a settlement agreement entered voluntarily with the advice of counsel. *See also*, *In re Master Key Antitrust Litigation*, 76 F.R.D. 460, 463-64 (D. Conn. 1977); *In re Marriage of Grace*, 643 P.2d 1188, 1191-92 (Mont. 1982); *Leroy Land Dev. v. Tahoe Regional Planning Agency*, 939 F.2d 696, 698-99 (9th Cir. 1991).

The bankruptcy court abused its discretion when it afforded Bodeker relief from the parties's stipulation based upon the United States Supreme Court's subsequent decision in *Siegel*. Bodeker made an informed, strategic choice to waive his homestead exemption. Bodeker's counsel advised him of the potential consequences. Bodeker's counsel had advised Bodeker, when Bodeker executed the stipulation, that the Tenth Circuit disagreed with the Ninth Circuit's equitable surcharge rule. Bodeker could have challenged the Ninth Circuit's rule. Bodeker elected not to challenge. The bankruptcy court should not have relieved Bodeker of his informed, strategic choice, simply because he later determined his decision to have been improvident. *See Bank of New York*, 14 F.3d at 759-60; *Powell v. Omnicom, BBDO/PHD*, 497 F.3d 124, 128 (2d Cir. 2007) ("When a party makes a

deliberate, strategic choice to settle, a court cannot relieve him of that [ ] choice simply because his assessment of the consequences [of settlement] was incorrect.").

The husband in *Grace* stood in much the same position when he bet wrongly that his marital estate included his military pension. The husband voluntarily had reached a settlement agreement that allowed him to keep the entirety of his military pension in exchange for him foregoing any claims on the remainder of the martial estate. Courts in other jurisdictions were considering at the time of the settlement whether a marital estate included a spouse's military pension. The United States Supreme Court ultimately determined that it did not. *McCarty v. McCarty*, 453 U.S. 210 (1981).

The husband sought to set aside the property settlement agreement based upon the change in decisional law prompted by the Court in *McCarty*. *Grace*, 643 P.2d at 1191. The Montana Supreme Court recognized that the husband had opted not to risk an adverse decision on whether the marital estate comprised his military pension. The husband instead had chosen to settle the issue before the United States Supreme Court had ruled definitively in *McCarty*. The Montana Supreme Court further noted that the husband had been represented by counsel and had arrived at the settlement through negotiations with his wife. The Montana

Supreme Court declined to allow the husband to reopen the voluntary property settlement agreement under these circumstances. *Grace*, 643 P.2d at 1191. The Court determines, too, that Bodeker should not have been allowed to reopen the stipulation regarding the waiver of his homestead exemption.

## **CONCLUSION**

This Court determines that the bankruptcy court improperly allowed Bodeker to rescind his waiver of homestead exemption to which he had agreed as part of the stipulation approved by the bankruptcy court.

## **ORDER**

The decision of the bankruptcy court is REVERSED and REMANDED for further proceedings consistent with this Memorandum and Order.

DATED this 2nd day of February, 2015.

_____
Brian Morris
United States District Court Judge